UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT LOUGH,

    Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al.,

    Defendant.

CASE NO. 3:20-CV-5894-LK-DWC

REPORT AND RECOMMENDATION

Noting Date: January 28, 2022

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. The District Court has referred this action, filed pursuant to 42 U.S.C. §1983, to United States Magistrate Judge David W. Christel. Pending before this Court is *pro se* Plaintiff's Motion for Partial Summary Judgment (Dkt. 76) and Defendants' Cross-Motion for Summary Judgment (Dkt. 78).

PROCEDURAL BACKGROUND

Plaintiff is civilly committed at the Washington State Special Commitment Center (SCC), a residential treatment facility for those detained under Washington State's sexually violent predator

statute, Ch. 71.09 RCW. Dkt. 24 at 1–2.[1] This case centers on Plaintiff's repeated efforts to buy a Xerox printer he believes he needs for his *pro se* legal work. *See* Dkt. 24 at 6–7.

In his Amended Complaint he alleges Defendants violated his constitutional rights by: (1) denying Plaintiff the right to take possession of a Xerox Phaser 3330 they permitted him to purchase; (2) retaliating against him for complaining about Defendants' refusal to give Plaintiff his printer; and, (3) violating Plaintiff's equal protection rights, among others, because other SCC residents were permitted to possess the same Xerox Phaser 3330 printer. Dkt. 24.

On June 11, 2021, Defendants filed a motion to dismiss, which this Court granted in part and denied in part. Dkt. 54. The Court dismissed Plaintiff's first claim for relief, with leave to file an amendment by November 1, 2021. Dkt. 56 at 6; Dkt. 70 at 3. Plaintiff did not file an amended Complaint.

On October 14, 2021, Plaintiff filed a motion for partial summary judgment. Dkt. 76. On October 29, 2021, Defendants filed a response and cross motion for summary judgment. Dkt. 78. On November 29, 2021, Plaintiff filed a reply (Dkt. 89) but he did not file a direct response to Defendants' cross motion for summary judgment.

On December 2, 2021, after providing notice of their intent (Dkt. 88), Defendants filed a Surreply (Dkt. 90) requesting the Court strike from the record Exhibits 40 through 52 attached to Plaintiffs' reply (Dkt. 89). On December 14, 2021, the Court directed the clerk's office to place Docket 89 under seal pending further review. Then, on December 15, 2021, the Court granted Defendants' motion to strike (Dkt. 90), directed the clerk's office to leave Docket 89 under seal, and directed Plaintiff to file (by January 5, 2022) an Amended Response, removing Exhibits 40 through

---

[1] *See also In re Detention of Lough*, 2016 WL 6601635 (Wash. Ct. App. 2016) (unpublished).

REPORT AND RECOMMENDATION - 2

52, but making no other changes. *See* Dkt. 93. Plaintiff failed to do so. Consequently, the Court has no response to Defendants' Motion for Summary Judgment to review in this case.

Separately, on December 2, 2021, Plaintiff filed a Response to Defendants' Surreply (Dkt. 91), and on December 9, 2021, Plaintiff filed his own Surreply (Dkt. 92) without first providing notice of intent to do so. Accordingly, in the Court's December 15, 2021 order, the Court also ordered the clerk's office to strike Dockets 91 and 92 in their entirety. *See* Dkt. 93. The Court re-noted the summary judgment of motions to January 7, 2022. *See* Dkt. 93.

## FACTUAL BACKGOUND

The following factual background is intended to provide context for issues presented, and not for the purpose of establishing the facts of this case.

Plaintiff alleges that Defendants approved the purchase of a Xerox Phaser 3330 printer (Xerox printer) on August 13, 2019. Dkt. 24 at 8. He further alleges that SCC will not allow him to use that specific printer and instead has offered him a different printer even though other SCC residents have been permitted to purchase and possess this same printer. *Id*. at 21.

Defendants state that Wi-Fi capable devices are limited at the SCC for security and treatment reasons. Dkt 81 at 3. SCC Policy 212 prohibits residents from owning Wi-Fi enabled devices because they can omit frequencies capable of disturbing body alarms and radios used by staff, and can be used by residents to share pornography. *Id*.

According to Defendants, the SCC I.T. Catalog contains pre-approved items residents may order by submitting a Resident Transfer of Funds (RTF) request. *Id*. at 4. If a resident wishes to purchase something that is not in the I.T. Catalog he must also submit and have approved an Exceptions Request in addition to an RTF. *Id*.

The Xerox printer at issue in this case was not in the I.T. Catalog during the period of time Plaintiff sought to purchase it (between July 2019 and January 2020). *Id*. However, it had

been included in the I.T. Catalog in the past, and a single resident at SCC had purchased it before staff discovered it had Wi-Fi capabilities. *Id*. at 3. Although I.T. staff decided to disable the Wi-Fi capabilities from that single printer, in so doing they discovered that removing Wi-Fi from a device is a complicated process and there is a high risk that the device can be damaged or destroyed in the process. *Id*. Therefore, they removed the Xerox printer from the I.T. Catalog. *Id*.; Dkt. 81-5 at 1- 3.

On July 3, 2019, Plaintiff submitted the first of many RTFs and Exception Requests to purchase the Xerox printer. Dkt. 81 at 4. Both requests were denied on July 30, 2019, with a note stating that I.T. review was pending and asking from which vendor Plaintiff hoped to purchase the requested Xerox printer. *Id*. Plaintiff submitted a second RTF and Exception Request on August 9, 2019. *Id*. Four days later the Exception Request was denied, with a comment stating [n]ot allowed from lawyer." *Id*.

In response to this denial, Plaintiff filed a grievance on August 15, 2019. Dkt. 80-1 at 1. Grievance Investigator Robert Hunt (Hunt) investigated. Dkt. 80 at 1-3. Hunt determined that the Xerox printer Plaintiff wanted to purchase was not in the I.T. Catalog. *Id*. at 3; Dkt. 83-1 at 15. Hunt also determined that another resident had the Xerox printer, but the purchase had been approved by the Exceptions Committee and the printer was included in the I.T. Catalog, by error, at the time that resident purchased it. *Id*. Hunt concluded that all SCC policies and procedures had been followed in Plaintiff's case, and he closed the grievance. *Id*.

Plaintiff then submitted another RTF and Exceptions Request for the Xerox printer on October 19, 2019, which were both denied. Dkt. 81 at 4. In the comments section staff wrote, "Research Wireless? This wireless printer is not authorized." *Id*. at 5. On January 30, 2020 Plaintiff submitted yet another RTF, which was denied "due to Wifi [sic] Connection." *Id*.

1     Notwithstanding Plaintiff's ongoing pursuit of permission from the Exceptions Committee to purchase the Xerox printer, on March 30, 2020, Plaintiff spoke to the SCC Legal Coordinator (Legal Coordinator) and claimed he had an approved RTF from August 2019 to purchase it. Dkt. 81-8 at 1. The Legal Coordinator then notified staff via email that Plaintiff was going to have the Xerox printer sent to the mailroom (even though she did not have authority to do so because Plaintiff did not have an approved Exceptions Request). Dkt. 83-1 at 4. The August 13, 2019 minutes taken by the Exceptions Committee indicate that Plaintiff's request on that date had been denied, causing some SCC staff to speculate that Plaintiff showed the Legal Coordinator a falsified RTF. Dkt. 80-4 at 5; Dkt. 81 at 5; Dkt. 81-6 at 1.

    Nevertheless, a person named Rhonda Nelson—whom Plaintiff told the SCC Legal Coordinator was his ex-wife—purchased the Xerox printer on Amazon.com and had it shipped to the mailroom on April 21, 2020. *Id*. However, the printer that arrived in the mailroom did not have the same model number as the printer listed on the "approved" RTF provided by the SCC Legal Coordinator. Dkt. 83-1 at 3. When mailroom staff attempted to verify that an approved RTF existed for the package, they realized that subsequent RTFs had been denied and that an Exceptions Request had never been granted for the Xerox printer. *Id*. Furthermore, I.T. staff checked the device and determined it violated SCC policy because it had Wi-Fi capabilities. *Id*. The SCC Legal Coordinator also determined that Plaintiff did not reimburse Ms. Rhonda Nelson for the Xerox printer, therefore his claims he paid for it himself remain unsubstantiated. Dkt. 24 at 13; Dkt. 83-1 at 4.

    SCC CEO, David Flynn, offered to purchase a Lexmark Laser Printer for Plaintiff at SCC's expense but Plaintiff rejected this offer. Dkt. 81 at 6. Ombudsperson, Leanne Stogsdill, conducted an investigation and concluded that the proposed remedy of SCC purchasing a

1  Lexmark printer for Plaintiff was "an adequate remedy" and that "no further compensation [was]
2  appropriate." Dkt. 83 at 2.

## STANDARD

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586(1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). A party may object to cited documentation asserting the material would not be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show the declarant or affiant is competent to testify on the matters stated. Fed. R. Civ. P.

56(c)(4). Objections to evidence because the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion and is duplicative of the summary judgment standard itself. *See Burch v. Regents of University of California*, 433 F.Supp.2d 1110, 1119–20 (E.D. Cal. 2006).

DISCUSSION

I.  **Plaintiff's Motion**

Turning first to Plaintiff's motion (Dkt. 76), it is not properly brought as a motion for summary judgment because it does not comply with Fed. R. Civ. P. 56. Specifically, it does not identify each claim and show that there is no genuine dispute as to any material fact such that Plaintiff is entitled to judgment as a matter of law. In fact, the motion does not seek judgment on the merits of any of Plaintiff's claims. Instead, Plaintiff asks the Court to order "Defendants to allow the Plaintiff to exchange his Xerox Phaser 3330 Printer sitting in their mailroom that has WiFi for a Xerox Phaser 3330 Printer that does not have WiFi, so that Plaintiff can again have a working printer in his cell." Dkt. 76 at 8. In his proposed order Plaintiff also asks that Court to order Defendants to allow him to "purchase a scanner so that the Plaintiff can scan all his legal materials into his computer and eliminate all the hard copy paper legal materials in his cell." Dkt. 76-1 at 2.

The Court construes Plaintiff's motion as a petition for mandamus relief. Pursuant to 28 U.S.C. § 1361, district courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, a petition for mandamus to compel a state official or agency to take or refrain from some action is frivolous as a matter of law. *See Demos v. United States District Court*, 925 F.2d 1160, 1161 (9th Cir. 1991); *Robinson v. California Bd. of Prison Terms*,

997 F.Supp. 1303, 1308 (C.D. Cal. 1998) (federal courts are without power to issue writs of mandamus to direct state agencies in the performance of their duties).

Since Plaintiff asks this Court to order officials of the State of Washington to act, his petition it frivolous as a matter of law and should be denied. *Demos*, 925 F.3d at 1161-62.

## II. Defendants' Motion

### a. Claim One

Since Plaintiff failed to file an amended complaint after the Court dismissed Claim One with leave to amend, Claim One remains dismissed, and should now be dismissed with prejudice for failure to state a claim upon which relief can be granted. *See* Dkt. 56 at 6; Dkt. 70 at 3.

### b. Claim Two

Plaintiff's second claim for relief alleges that Defendants retaliated against him for writing grievances, contacting his attorney, and requesting help from others by moving him to the segregation unit in SCC. Dkt. 24 at 10.

To prevail on a retaliation claim, a plaintiff must allege and prove defendants retaliated against him for exercising a constitutional right and the retaliatory action did not advance legitimate penological goals or was not narrowly tailored to achieve such goals. *Hines v. Gomez,* 108 F.3d 265, 267 (9th Cir. 1997).

A prisoner suing a prison official under 42 U.S.C. § 1983 for retaliation for engaging in protected speech must allege "the type of activity he engaged in was protected under the first amendment and that the state impermissibly infringed on his right to engage in the protected activity." *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1983). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected

conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citations omitted). "[M]ere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citations omitted).

Defendants dispute that they took adverse action against Plaintiff because he engaged in protected conduct. Instead, they aver that they moved Plaintiff to the Cedar West Unit[2] of the SCC because he "had been exhibiting aggression towards his therapist and the resident advocate" and was issued a "Behavior Management Report (BMR) on December 28, 2019."[3] Dkt. 82-1 at 1-5. According to Defendants, "The treatment team concluded that [Plaintiff] needed the supervision provided at the Cedar West Unit and recommended that he be moved," so after the Placement Committee approved their request on January 9, 2020, Plaintiff was moved later that day. Dkt. 78 at 10; Dkt. 82 at 3.

Next, Defendants contend that the move to Cedar West Unit did not chill Plaintiff's speech, as he has been litigating this case since the move without any infringement upon his First Amendment rights. Dkt. 78 at 10.

Finally, Defendants argue that the move reasonably advanced a legitimate correctional goal, to wit, "proper management and treatment of SCC residents". Dkt. 78 at 10. Due to

---

[2] Defendants also state that SCC does not have a segregation unit. Dkt. 82 at 2. According to Defendants, SCC has three different program areas. "Program Area 3 is for low management, Program Area 2 is for moderate management, and Program Area 1 is for high management." *Id*. at 2-3. Cedar West, where Plaintiff was moved, is designated Program Area 1. *Id*. at 2.

[3] This Behavior Management Report was authored by someone named "Jose Mendoza." Dkt 82-1 at 1.

REPORT AND RECOMMENDATION - 9

Plaintiff's "escalating behavior" his treatment team determined he would be best managed in the area of SCC that offers the highest level of management. *Id*.

Plaintiff did not traverse these arguments, nor has he presented the Court with any evidence other than speculation, from which this Court can draw any reasonable inferences in his favor.[4] Instead, his claims are supported only by "uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quotation omitted). Moreover, given Plaintiff's *pro se* prosecution of this case beginning in August 2020—after his move to Program Area 1—this Court concurs with Defendant that Plaintiff cannot demonstrate the move chilled his speech.

In sum, the Court finds Defendants have demonstrated the absence of any genuine issue of material fact regarding Plaintiff's retaliation claim, and are therefore entitled to judgment as a matter of law on Claim Two.

### c. Claim Three

Plaintiff's third claim for relief alleges, *inter alia*, a violation of his right to Equal Protection, stating:

> The actions of Defendants as alleged in paragraphs 5.1-5.31 constitutes (sic) treating Plaintiff differently from other residents who are similarly situated and have been approved to purchase this very same Xerox Phaser 3330 Printer and other legal supplies, and being purchased by their attorneys, too. Defendants['] excuses and actions were unreasonable and unwarranted as Plaintiff cannot continue to be a pro se litigant in appealing his being detained (sic) indefinitely here at SCC. In addition, the denial by Defendants of Plaintiff's initial attempts to purchase his printer, and then once it was paid for and issued to Plaintiff, taken from him, could be seen as harassment as Plaintiff had complained of their actions before. Defendants['] actions are in violation of Plaintiff's right to Due Process, Meaningful Access to This Court, and Equal Protection guaranteed by the First,

---

[4] Plaintiff admits in his Complaint that SCC staff informed him he was being moved after he exhibited aggressive behavior to staff and residents and denied others access to the day room T.V. Dkt. 24 at 9-10.

Fourth, Sixth, Eighth, and the Fourteenth Amendments of the United States Constitution.

Dkt. 24 at 15.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (internal citation omitted). To succeed on a claim for equal protection, a plaintiff must show that "the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Plaintiff alleges he is a member of a protected class of one—that is, he is in a class consisting of the one person at SCC whom Defendants denied the Xerox printer. Defendants correctly assert that the very nature of the discretionary decision-making required to operate SCC requires an array of subjective, individualized assessments that sometimes result in treating individual residents differently from others, which the law permits as an accepted consequence of exercising that discretion. Dkt. 78 at 11; *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008)(The "class of one" equal protection theory does not apply in cases that "by their nature involve discretionary decision making based on a vast array of subjective, individualized assessments.").

In addition, according to Defendants, only one other resident was permitted to purchase the Xerox printer before I.T. staff discovered it had Wi-Fi capabilities, performed the necessary steps to remove the Wi-Fi, and decided to remove the printer from the I.T. catalogue because removing the Wi-Fi was too complicated and involved a risk of damaging or destroying the printer in the process. Dkt 81 at 3. Thus, not only was Plaintiff not the only SCC resident

1  effectively "denied" the Xerox printer, but Defendants persuasively argue that the decision to

2  remove it from the I.T. catalogue was not made with the intent to discriminate against Plaintiff.

3  Dkt. 78 at 13-14. Instead, there was a rational basis[5] for doing so.

4      In sum, the Court finds Defendants have demonstrated the absence of any genuine issue

5  of material fact regarding Plaintiff's claim that his right to Equal Protection of the law was

6  violated. Defendants are therefore entitled to judgment as a matter of law on Claim Three.

7  CONCLUSION

8      Based on the foregoing, the Court recommends Plaintiff's Motion for Partial Summary

9  Judgment (Dkt. 76) be DENIED, Defendants' Cross-Motion for Summary Judgment (Dkt. 78) be

10 GRANTED, and this case be DISMISSED WITH PREJUDICE.

11     Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

12 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

13 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

14 review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit

15 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

16 January 28, 2022, as noted in the caption.

17     Dated this 13th day of January, 2022.

                                                           David W. Christel
                                                           United States Magistrate Judge

---

[5] Under the rational basis test, difference in treatment is constitutional unless it is irrelevant to any legitimate state objectives. *In re Stevens*, 191 Wn. App. 125, 135, 361 P.3d 252 (2015). In other words, a State can treat similarly situated persons differently as long as (1) the State's action applies to all of the members of the group in question, (2) there are reasonable grounds to distinguish between these groups, and (3) the different treatment is relevant to a legitimate government interest. *Id*. The burden is on the plaintiff to show that the different treatment is purely arbitrary. *Id*. at 135-36.